UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------X
DANIEL J. O'KEEFE,

       Plaintiff,

  - against -

THE UNITED STATES DEPARTMENT
OF DEFENSE,

       Defendant.

----------------------------X

<u>MEMORANDUM AND ORDER</u>

Civil Action No.
CV-05-2956 (DGT)

Trager, J.:

    <u>Pro se</u> plaintiff Daniel J. O'Keefe ("O'Keefe") brings this
action pursuant to the Freedom of Information Act ("FOIA")
seeking disclosure of redacted portions of documents produced by
the defendant, the United States Department of Defense (the
"DOD"), released in response to his FOIA request.  O'Keefe also
requests an <u>in camera</u> review of a one-page memorandum withheld in
its entirety.  O'Keefe further alleges the existence of
additional responsive records and seeks their disclosure.  The
DOD claims that the redacted portions of the released documents
were exempt from disclosure under FOIA Exemptions 3, 5, 6 and
7(C) and that no additional responsive records exist.  The DOD
now moves for judgment on the pleadings under Federal Rule of
Civil Procedure 12(c), or in the alternative, for summary
judgment under Rule 56.

## Background

In March 2004, O'Keefe requested under FOIA "all documents, records, notes and papers related to or used in the investigation and disposition" of a complaint he filed with the Department of Defense Inspector General in August 2002. Pl.'s Aff. in Opp'n. to Def.'s Mot. for Dismissal or, in the Alternative, for Summ. J. ("Pl.'s Opp'n") ¶ 16. In his complaint, O'Keefe alleges misconduct on the part of his commanding officers on several occasions in August, 2002. Id. ¶¶ 4-9, 12.

According to O'Keefe, the first of these incidents occurred on August 14, 2002 when Staff Sergeant Julianne Mazak ("SSG Mazak"), O'Keefe's immediate supervisor, requested that he sign two Developmental Counseling Forms[1] stating that he had failed to meet the Army Over Weight and Body Fat Standards. Pl.'s Opp'n, Ex. A. O'Keefe did not immediately sign the forms but, rather, stated his desire to review the forms and possibly consult with an attorney. Id. Later that same day, he was called into a meeting where another superior officer, Chief Warrant Officer II Victor Diaz ("CW2 Diaz"), attempted to compel O'Keefe to sign the forms and accused him of insubordination and refusing to follow a

---

[1] Developmental Counseling Forms are documents on which supervising officers record details of disciplinary counseling sessions conducted with subordinates. Dep't of the Army, Army Leadership Be Know Do, Field Manual No. 22-100, App. C, Aug. 31, 1999.

direct order.[2]  Id. ¶ 5.  O'Keefe requested a copy of the body
fat calculation worksheet, any related documents, and a
consultation with an attorney, but otherwise remained silent.
Id. ¶ 5, Ex. B.

O'Keefe further alleges that CW2 Diaz directed O'Keefe into
a "high pressure, intimidating meeting," instructed him that he
had no right to talk to a lawyer and ordered him to sign the
forms.  Pl.'s Opp'n ¶ 5, Ex. B.  Upon leaving this meeting,
O'Keefe signed the forms after indicating in writing that he
disagreed with the information therein and that he was signing
under duress.  Id. ¶ 7, Ex. B.  Before submitting the signed
forms, O'Keefe was led to a fourth meeting in which Chief Warrant
Officer V Joe Okabayashi ("CW5 Okabayashi") made "statements
similar to Chief Diaz's" and informed O'Keefe he had no right to
an attorney.  Id., Ex. B.  At the conclusion of this meeting,
O'Keefe left the signed documents in the custody of CW5
Okabayashi.  Id. ¶ 7, Ex. B.

On August 16, 2002, SSG Mazak gave O'Keefe two written
notices, one accusing him of insubordinate conduct and the other
accusing him of failing to obey an order, for his conduct in the
aforementioned meetings.  Pl.'s Opp'n ¶¶ 8, 9.  The second of
these notices asserted that SSG Mazak had informed O'Keefe many

---

[2] Both Insubordination, 10 U.S.C. § 891, and Failure to Obey
Order or Regulation, 10 U.S.C. § 892, are violations of the
Uniform Code of Military Justice.

times that his right to seek counsel for any reason would not be denied. Id. That same day, O'Keefe wrote a letter to Joseph Schmitz, Inspector General of the Department of Defense, in which he denied any disrespect and complained that the charges against him were retaliatory in nature. Id. ¶ 8, Ex. B.

O'Keefe further asserts that on September 13, 2002, SSG Mazak gave O'Keefe a negative performance evaluation and ordered him to sign his name to ten blank sheets of paper onto which the finalized evaluation would later be photocopied. Id. ¶ 12. After objecting, O'Keefe signed one sheet of paper and notified SSG Mazak that she did not have his consent to photocopy any information upon that sheet. Id.

On December 4, 2002, O'Keefe complained of these events in a telephone conversation with Col. Georgette T. Hassler, Deputy Inspector General ("Col. Hassler"). Id. ¶ 13. At her request, O'Keefe sent a letter to Col. Hassler describing the events of September 13, 2002. Id. Col. Hassler conducted an investigation and authored a report, which was completed on March 21, 2003. The report concluded that O'Keefe's allegations were unsubstantiated. Id. Ex. F.

On March 7, 2004, O'Keefe filed a FOIA request for all documents relating to his August 16, 2002 complaint. Pl.'s Opp'n ¶ 16, Ex. G. By letter dated April 16, 2004, the DOD OIG Freedom of Information Act & Privacy Act Office ("OIG FOIA/PA Office")

acknowledged receipt of O'Keefe's FOIA request. Decl. of John R. Crane ("Crane Decl.") ¶ 8. That same day, the OIG FOIA/PA Office requested that the Deputy Inspector General for Inspections and Policy, the Director for Internal Operations Directorate, the Director of Hotline and the Director for Investigations of Senior Officials search for and copy any documents related to the investigation of O'Keefe's complaint. Crane Decl. ¶ 10, Ex. C.

The Defense Hotline[3], the only component[4] to locate any responsive records, provided the OIG FOIA/PA Office with eight pages of documents it had generated in response to O'Keefe's complaint (the "Hotline Report") and an additional eight pages of documents generated by the United States Central Command (the "USCENTCOM Report"). Crane Decl. ¶ 10. The OIG FOIA/PA Office Initial Denial Authority, Darryl R. Aaron ("IDA Aaron"), released the Hotline Report to O'Keefe in a letter dated May 27, 2004. Crane Decl. ¶ 11, Ex. D. Six of the eight pages contained redacted portions, for which IDA Aaron cited FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), which excludes information in law enforcement records that could constitute an unwarranted invasion of privacy if released. <u>Id.</u> IDA Aaron also notified O'Keefe

---

[3] The Defense Hotline is a means for DOD employees and the general public to report allegations of fraud, waste, abuse of authority and gross mismanagement. Crane Decl. ¶ 4.

[4] In his declaration, Assistant Inspector General Crane refers to the various Deputies and Directors addressed in the April 16, 2004 letter as "components."

that the OIG FOIA/PA Office had referred the USCENTCOM Report to the Office of Freedom of Information and Security Review in accordance with DOD FOIA policy, which requires the document originator to make release determinations. Crane Decl. ¶ 12, Ex. D.

By memorandum dated June 17, 2004, the Office of Freedom of Information and Security Review referred the USCENTCOM Report to the originating component, USCENTCOM, for a determination regarding release. Decl. of Jacqueline J. Scott ("Scott Decl.") ¶ 2, Ex. A; Crane Decl. ¶ 13, Ex. F. On June 22, 2004, USCENTCOM received the referral and acknowledged receipt of the request by letter to O'Keefe on the same day. Scott Decl. ¶ 2, Ex. B; Crane Decl. ¶ 14, Ex. G.

O'Keefe appealed the OIG FOIA/PA response by letter dated July 10, 2004. Crane Decl. ¶ 15, Ex. H; Pl.'s Opp'n ¶ 19, Ex. J. On September 16, 2004, John R. Crane ("Crane"), OIG FOIA/PA Office Appellate Authority, acknowledged receipt of the appeal by letter to O'Keefe. Crane Decl. ¶ 16, Ex. I. Crane requested that the Defense Hotline conduct another search of their records, but no additional responsive documents were found. Crane Decl. ¶ 17. On March 10, 2005, Crane notified O'Keefe of his determination that the initial OIG IDA response was appropriate. Crane Decl. ¶ 18, Ex. K; Pl.'s Opp'n ¶ 20, Ex. K. On June 20, 2005, O'Keefe filed this action under FOIA in the Eastern

District of New York.

In the course of preparing for this action, the DOD discovered that USCENTCOM had failed to respond to O'Keefe's request regarding the USCENTCOM Report. Scott Decl. ¶ 7. Until providing a supporting declaration for this action, USCENTCOM mistakenly believed that the eight-page Hotline Report, which was already released to O'Keefe, was the same document the eight-page USCENTCOM Report. Scott Decl. ¶ 7.

On March 3, 2006, upon realizing this mistake, USCENTCOM released the USCENTCOM Report to O'Keefe. Scott Decl. ¶ 8. Within this report, seven of the eight pages contained redacted portions, and the eighth page was withheld in its entirety. Scott Decl. ¶ 8. The seven partially redacted pages consisted of a Defense Hotline Completion Report prepared by the USCENTCOM Inspector General ("CCIG") investigating O'Keefe's complaint. Scott Decl. ¶ 9. USCENTCOM based these redactions on 5 U.S.C. §§ 552(b)(3) ("Exemption 3"), which excludes information exempted by other statutes, and 5 U.S.C. §§ 552(b)(6) ("Exemption 6"), which exempts personnel, medical and similar files. Scott Decl. ¶ 8. The additional page, which was entirely withheld, was a memorandum prepared by a US Central Command Deputy Staff Judge Advocate ("CCJA") for the CCIG providing comments and legal advice regarding the Defense Hotline Completion Report. Scott Decl. ¶ 10. USCENTCOM based the exclusion of this document on 5

U.S.C. § 552(b)(5) ("Exemption 5"), which exempts attorney work product and material subject to attorney-client privilege.  Scott Decl. ¶ 8.

## Discussion

### (1)

### Freedom of Information Act

"FOIA was enacted to promote honest and open government and to assure the existence of an informed citizenry 'to hold the governors accountable to the governed.'"  Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999) (quoting Ethyl Corp. v EPA, 25 F.3d 1241, 1245 (4th Cir. 1994)).  To advance the philosophy of "full agency disclosure," the Act is to be construed broadly, and its exemptions are to be read narrowly. Id.

FOIA enumerates nine categories of agency records that are exempt from release.  5 U.S.C. § 552(b).  These exemptions are intended to balance the right of the public to know the activities of its government with the government's interest "in keeping certain information private, whether to protect particular individuals or the national interest as a whole." ACLU v. U.S. Dep't of Justice, 265 F. Supp. 2d 20, 27 (D.D.C. 2003); see also John Doe Agency v. John Doe Corp., 493 U.S. 146, 152-53 (1989).  These exemptions are construed narrowly because

"disclosure, not secrecy, is the dominant objective of [FOIA]."
Dep't of Interior v. Klamath Water Users Protective Ass'n, 532
U.S. 1, 8 (2001) (quoting Dep't of the Air Force v. Rose, 425
U.S. 352, 361 (1976)).  When an agency's decision to withhold
information is challenged, the burden of proof is on the agency
to establish -- not the requestor to disprove -- the
applicability of the claimed exception.  Wood v. FBI, 432 F.3d
78, 83 (2d Cir. 2005).


### (2)

### The DOD's Motion to Dismiss

The DOD moves for judgment on the pleadings under Rule 12(c)
on the ground that this Court lacks jurisdiction because all
responsive, non-exempt information has been released.

A claim arising under FOIA "is dependent upon a showing that
an agency has (1) 'improperly' (2) 'withheld' (3) 'agency
records.'"  Grand Cent. P'ship v. Cuomo, 166 F.3d at 478 (quoting
Dept. of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989)).
Only when all three criteria have been met does a district court
have the power to order an agency's compliance with FOIA's
requirements.

The standard applied on a Rule 12(c) motion for judgment on
the pleadings is the same as that for a Rule 12(b)(6) motion to
dismiss for failure to state a claim.  See, e.g., D'Alessio v. NY

Stock Exch., 258 F.3d 93, 99 (2d Cir. 2001); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). All well-pleaded allegations in the complaint are accepted as true, and all inferences are drawn in favor of the plaintiff. Patel v. Searles, 305 F.3d 130, 134-35 (2d Cir. 2002); D'Alessio, 258 F.3d at 99. The complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." D'Alessio, 258 F.3d at 99 (internal quotations omitted).

Because there is a question as to the reasonableness of the use of exemptions cited by the DOD and the thoroughness of its searches for responsive documents, the matter cannot be resolved on the pleadings. Therefore, the parties' submitted affidavits will be considered and the motion decided under the summary judgment standard.

### (3)

### The DOD's Motion for Summary Judgment

In the alternative, the DOD seeks summary judgment in its favor on the ground that it has complied with its FOIA obligation to conduct an adequate search for responsive records. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The DOD, as the moving party, bears

the burden of demonstrating the absence of a genuine issue of material fact. Baisch v. Gallina, 346 F.3d 366, 371 (2d Cir. 2003). To prevail on a motion for summary judgment in a claim arising under FOIA, the defending agency must show that its search for responsive documents was adequate and that any material withheld falls within one of FOIA's enumerated exceptions. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

**a.    Redacted Portions of Defense Hotline Report**

The names and other personally identifying characteristics of Defense Hotline investigators were redacted from the Hotline Report released to O'Keefe by the OIG FOIA/PA Office. Crane Decl. ¶¶ 19-20, Ex. D. IDA Aaron cited 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") as the basis for these redactions. Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C). Review of a withholding under Exemption 7(C) requires a balancing test, weighing the individual's interest in privacy against the public's need for information. Grand Cent. P'ship, 166 F.3d at 485.

O'Keefe originally appealed the redaction of the personally identifying information on the basis of <u>Kilroy v. National Labor Relation Board</u>, 633 F. Supp. 136 (S.D. Ohio 1985), which he claims limits Exemption 7(C) to ongoing investigations. Pl.'s Opp'n ¶ 19, Ex. J. O'Keefe's opposition affidavit does not renew this challenge, and rightfully so; Exemption 7(C) contains no such limitation. Indeed, even <u>Kilroy</u> authorized the redaction under Exemption 7(C) of personal information from documents relating to closed hiring discrimination suits. <u>Kilroy</u>, 633 F. Supp. at 145.

Inquiry into the use of Exemption 7(C) requires two steps. <u>Perlman v. U.S. Dep't of Justice</u>, 312 F.3d 100, 105 (2d Cir. 2002), <u>vacated</u>, 541 U.S. 970 (2004), <u>aff'd on remand</u>, 380 F.3d 110 (2d Cir. 2004). First, the document must have been compiled for law enforcement purposes. <u>Id.</u> Next, the agency must demonstrate that release would result in the harm specified by FOIA. <u>Id.</u> <u>Perlman</u> held that an Inspector General of a federal agency does engage in law enforcement activities within the meaning of FOIA. As the report details the investigation of O'Keefe's complaint, these documents were "compiled for law enforcement purposes" as contemplated by Exemption 7(C).

The harm specified in Exemption 7(C) is whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C).

Government employees, and specifically law enforcement personnel, have a significant privacy interest in their identities, as the release of their identities may subject them to embarrassment and harassment. Halpern v. FBI, 181 F.3d 279, 296-97 (2d Cir. 1999). Furthermore, the release of the investigators' names would shed little, if any, light on how the DOD conducted this investigation. The identities of those conducting the investigations are "simply not very probative of an agency's behavior or performance." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991); Wood, 432 F.3d at 88-89 (finding public interest in identity of employees assigned to investigate FBI agents for administrative discipline "minimal at best"); Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d 356, 373-74 (S.D.N.Y. 2002) (finding identities of FBI investigators not significantly probative of agency conduct).

Thus, the extent to which the public interest in knowing how the DOD conducts investigations would be served, vel non, does not outweigh the privacy interests of the persons conducting the investigation, and use of Exemption 7(C) in this instance is proper. The DOD's motion for summary judgment is granted with respect to the use of Exemption 7(C) to withhold personally identifying information from the Hotline Report released to O'Keefe by the OIG FOIA/PA Office.

**b.   Personal Information Redacted from the USCENTCOM Report**

The names and telephone numbers of DOD personnel who conducted or reviewed the investigation, as well as those individuals interviewed in the course of the investigation, were also redacted from the USCENTCOM Report that was released to O'Keefe.  Scott Decl. ¶¶ 8-9, Ex. D.  Although the OIG FOIA/PA Office successfully asserts Exemption 7(C) as the basis for its similar redactions from the Hotline Report, USCENTCOM asserts FOIA Exemptions 3 and 6 as the basis for its redactions from the USCENTCOM Report.  Id.  Thus, Exemptions 3 and 6 are analyzed separately below, even though they cover information of a similar nature to that covered by Exemption 7(C).

**i.   Exemption 3**

O'Keefe challenges the DOD's use of Exemption 3 to exclude testimonial records, but not its use to exclude personal information from the USCENTCOM Report.  Pl.'s Opp'n ¶ 25-27.  Nonetheless, this assertion of Exemption 3 is reviewed for propriety.

Exemption 3 allows an agency to withhold documents that are exempt from disclosure by another federal statute.  This covers matters that are

> specifically exempted from disclosure by statute
> (other than section 552b of this title), provided

14

that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

5 U.S.C. § 552(b)(3). As the applicable statute, the DOD cites

10 U.S.C. § 130b(a), which provides that the Secretary of Defense

may,

notwithstanding [FOIA], authorize to be withheld from disclosure to the public personally identifying information, regarding - (1) any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit; and (2) any employee of the Department of Defense . . . whose duty station is with any such unit.

10 U.S.C. § 130b(a). 10 U.S.C. § 130b(c)(5) defines "routinely

deployable unit" as one that

normally deploys from its permanent home station on a periodic or rotating basis to meet peacetime operational requirements that, or to participate in scheduled training exercises that, routinely require deployments outside the United States and its territories. Such a term includes a unit that is alerted for deployment outside the United States and its territories during an actual execution of a contingency plan or in support of a crisis operation.

The individuals about whom information was redacted from the USCENTCOM Report were all either conducting or reviewing the investigation or were USCENTCOM personnel interviewed in the course of the investigation. Scott Decl. ¶ 9, Ex. D. They are all members of the armed forces and employees of the DOD; however, the DOD has made no showing that they are stationed with a "routinely deployable unit" or any other unit within the ambit

15

of 10 U.S.C. § 130b(a).  Rather, the DOD merely concludes that "[t]hese individuals . . . fall within 10 U.S.C. § 130b(a)." Mem. of Law in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mem.") at 14.  Therefore, Exemption 3 is not an adequate basis for these redactions.  Cf. Windel v. United States, No. A02-306, 2005 WL 846206, at *2 (D. Alaska April 11, 2005) ("[T]he declaration of Lieutenant Colonel John Higgins supports the USA's assertion that the names withheld belong to members of routinely deployable units, as defined in Title 10.").

### ii.  Exemption 6

As an additional basis for the redaction of personally identifying information, USCENTCOM cites FOIA Exemption 6, 5 U.S.C. § 552(b)(6).  Scott Decl. ¶¶ 8-9, Ex. D.  Exemption 6, similar to Exemption 7 as asserted by the OIG FOIA/PA Office, is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  Wood v. FBI, 432 F.3d at 86 (quoting U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599 (1982)). To that end, Exemption 6 excludes from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

The application of Exemption 6 requires a two-part inquiry. _Wood_, 432 F.3d at 87. The first step is to determine whether the information is contained in a file similar to a medical or personnel file. _Id._ The second step is to balance the individuals' privacy interest against the public's interest in disclosure of information compiled by the government. _Wood_, 432 F.3d at 87. The privacy side of the Exemption 6 balancing test, however, is broad and "encompasses all interests involving 'the individual's control of information concerning his or her person.'" _Wood_, 432 F.3d at 88 (quoting _Hopkins v. U.S. Dep't of Housing and Urban Dev._, 929 F.2d 81, 87 (2d Cir. 1991)). On the public interest side, the relevant inquiry is whether disclosure would "she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." _Wood_, 432 F.3d at 88 (quoting _Bibles v. Or. Natural Desert Ass'n_, 519 U.S. 355, 355-56 (1997)).

### 1.   Applicability of Exemption 6

O'Keefe first contends that Exemption 6 does not apply to the investigative records at issue here, because they are not similar to personnel or medical files and are not listed in DOD Directive 5400.7-R[5] ("DOD Directive"). Pl.'s Opp'n ¶ 28, Ex. N;

---

[5] DOD Directive 5400.7-R is a regulation that provides policies and procedures to assist DOD components to implement the DOD FOIA Program. Dep't of Defense, DOD FOIA Program, DOD

Dep't of Defense, DOD Freedom of Info. Act Program, DOD Directive 5400.7-R at 37-38, Sept. 1998.  Although it is not clear whether the enumeration of documents in the DOD Directive is meant to be illustrative or exhaustive, the Second Circuit has held that "Exemption 6 applies to any personal information contained in files similar to personnel or medical files, such as administrative investigative records." <u>Wood</u>, 432 F.3d at 87 (emphasis added).  Thus, Exemption 6 is applicable and analysis under its balancing test is proper.

### 2.    Exemption 6 Balancing Test

O'Keefe also contends that USCENTCOM's use of Exemption 6 to withhold personal information of investigators as well as the subjects of the investigation was improper because the public interest in disclosure outweighs any potential invasion of personal privacy.  Pl.'s Opp'n ¶¶ 25, 30.  One public interest asserted by O'Keefe is that full disclosure of the identities of the investigative staff would provide the accountability necessary to improve the quality of DOD investigations.  Pl.'s Opp'n ¶ 33.

However, as noted supra, investigative personnel have significant privacy interests as they may be subject to

_____

Directive 5400.7-R at 10, Sept. 1998, <u>available at</u> http://www.dodea.edu/foia/iod/pdf/5400_7r.pdf.

harassment or embarrassment if their identities are disclosed.
Wood, 432 F.3d 88 (finding withholding of names of FBI
investigators proper as individuals may be subject to harassment
or embarrassment); Halpern, 181 F.3d at 297 (recognizing risk of
harassment or embarrassment if identities of FBI agents or other
government employees are disclosed); Massey v. FBI, 3 F.3d 620,
624 (2d Cir. 1993) (same); New England Apple Council v. Donovan,
725 F.2d 139, 142 (1st Cir. 1984) (collecting cases).  In
balancing this risk of harm with the public's interest in
disclosure, several factors are considered, such as the
employees' ranks and whether their identities would shed light on
the scrutinized government activity.  Wood, 432 F.3d at 88.

Here, the probative value of this personally identifying
information is nominal and does not overcome the privacy interest
of the employees involved.  The employees who conducted the
investigation are of relatively low rank, and the identities of
any decision-makers have already been released.  Moreover, any
negligence in conducting this investigation would be apparent in
the actions, not identities, of the DOD staff.  See Wood, 432
F.3d at 89 ("Assuming that there was bias in the investigation,
it would be reflected in the actions taken or not taken by the
FBI or the DOJ," not the identities of the government
investigators.).

Another public interest cited by O'Keefe is exposing and

19

preventing the reoccurrence of the alleged misconduct committed by his commanding officers. Pl.'s Opp'n ¶ 31. O'Keefe also argues that, due to their misconduct, the subjects of the investigation deserve minimal, if any, consideration for their privacy. Id.

Here, the public disclosure of the names of the subjects of the investigation raises a measurable privacy concern. Indeed, individuals mentioned in investigative reports have privacy interests that are potentially greater than those of investigative personnel as disclosure may reveal that they were suspected of criminal conduct. Massey v. FBI, 3 F.3d at 624 (finding subjects of FBI investigation to have substantial interest in confidentiality of their identities); Lawyers Committee for Human Rights v. INS, 721 F. Supp. 552, 565 (S.D.N.Y. 1989) (recognizing that mention of an individual's name in law enforcement files may "engender comment and speculation and carry a stigmatizing connotation" (quoting Branch v. FBI, 658 F. Supp. 204 (D.D.C. 1987))). Moreover, the individuals about whom personally identifying information has been withheld have not been convicted of any wrongdoing, and O'Keefe's allegations were found to be unsubstantiated. Pl.'s Opp'n, Ex. F. What little public interest, if any, may be gained from the identity of the subjects of the DOD investigation is, thus, outweighed by the privacy concerns of the accused.

Finally, O'Keefe argues that the privacy interest of the subjects of the investigation is negligible because, due to his "familiarity and working relationship" with these individuals, he is already able to deduce the identities of the parties. Pl.'s Opp'n ¶ 32. Thus, O'Keefe argues, "the release of all testimonial material would not result in any intrusion of personal privacy or release of personal information, [sic] beyond that which is already known by [O'Keefe]." Pl.'s Opp'n ¶ 32. This argument is unpersuasive as it fails to account for the privacy interest of the individuals served by excluding their identities from the public at large. Furthermore, O'Keefe's private assertions of the identities of the subjects of the investigation does not amount to a waiver of those individuals' privacy rights.

On balance, the public interest in disclosure is nominal and is substantially outweighed by the privacy interest of the investigators and subjects of the investigation. Therefore, the exclusion of personal information under FOIA Exemption 6 was proper as disclosure would constitute a "clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). The DOD's motion for summary judgment is granted with respect to the use of Exemption 6 to withhold the personally identifying information from the USCENTCOM Report.

**c.    The Existence of Additional, Undisclosed Documents**

O'Keefe alleges the existence and requests the release of additional documents referenced in the USCENTCOM Report released to O'Keefe by letter dated March 3, 2006.  Pl.'s Opp'n ¶ 24.  The DOD, relying on the declarations of Crane and Scott, maintains that all responsive, non-exempt material has been released to O'Keefe.  Def.'s Reply Mem. ("Def.'s Reply") at 2.

In a challenge to the thoroughness of an agency's search for responsive documents, summary judgment may be granted based on agency affidavits "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  Grand Cent. P'ship v. Cuomo, 166 F.3d at 478 (quoting Gallant v. NLRB, 26 F.3d 168, 171 (D.C. Cir. 1994) (citation omitted)).  Any such agency affidavits are "accorded a presumption of good faith," Carney, 19 F.3d at 812, but must, nonetheless, show that an agency has used methods "reasonably calculated" to produce responsive documents. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Conversely, a plaintiff in a FOIA claim can avoid summary judgment by making a showing of bad faith "sufficient to impugn the agency's affidavits or declarations" or by providing "tangible evidence that . . . summary judgment is otherwise inappropriate."  Carney, 19 F.3d at 812.

O'Keefe accurately notes that the USCENTCOM Report contains numerous references to various "testimonies." Scott Decl., Ex. D at 2. Also, under the section titled "Documents Reviewed," the report lists an item called "Summarized Testimony." Scott Decl., Ex. D at 2-3. O'Keefe asserts that use of Exemptions 3 and 6 of the FOIA to withhold this information is improper. Pl.'s Reply ¶¶ 25-27. However, the DOD does not assert Exemptions 3 and 6 of FOIA as the basis for withholding such testimony. Rather, the DOD claims that the items in question refer only to sworn oral testimony, not written documents. Def.'s Reply, at 3. With many of the references to "testimony" within the report, this is obviously the case. E.g., Scott Decl., Ex. D at 2 (noting, "obtained sworn in person testimony"). However, it is not as clear that the item titled Summarized Testimony refers to such sworn oral statements. Summarized Testimony appears under the section titled "Documents Reviewed" along with five other physical documents presumably used in the preparation of the USCENTCOM Report. Scott Decl., Ex. D at 2-3. Sworn oral testimony cannot be considered a "document" nor can it, as a practical matter, be "reviewed" in preparation for such a report.

The DOD has submitted a declaration asserting that it has conducted two searches for the requested documents. Crane Decl. ¶¶ 10 and 17. However, this declaration merely refers to the second search for responsive documents as a "routine procedure

upon receipt of an appeal" and contains no specificity of detail nor any description of methods employed in the search for responsive records.[6] Crane Decl. ¶ 17. This boilerplate description of the search for records is insufficient to show that the DOD's methods were "reasonably calculated" to produce response documents, Weisberg, 745 F.2d at 1485, and does not comport with the requirements of FOIA. Compare Dinsio v. FBI, 445 F.Supp.2d 305, 312-13 (W.D.N.Y. 2006) (denying summary judgment where the agency's declarations failed to describe the scope and method by which search was conducted) with Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d at 367 (finding that a declaration describing in detail the FBI's search of its central records system satisfied requirements of FOIA). Even when considered with a presumption of good faith, this declaration alone does not satisfy the agency's burden of proof in light of the above contradictory evidence. The DOD's motion for summary judgment is denied without prejudice in this respect. Upon submission of detailed declarations conforming to the above standards, the DOD may renew its motion.

---

[6] Paragraph 17 of the Crane declaration, in full, describes the second search as follows: "On September 16, 2004, the OIG DoD Defense Hotline was tasked to again search their/files [sic] for responsive documents. This is a routine procedure upon receipt of an appeal to ensure that all responsive documents were found that were responsive to the plaintiff's FOIA request."

**d.    In-Camera Review**

USCENTCOM also withheld, in its entirety, a one-page memorandum prepared by a USCENTCOM Deputy Staff Judge Advocate ("CCJA") for the CCIG providing comments and legal advice regarding the Defense Hotline Completion Report.  Scott Decl. ¶ 10.  USCENTCOM based the exclusion of this document on FOIA Exemption 5, 5 U.S.C. § 552(b)(5) ("Exemption 5").  Scott Decl. ¶ 8.  Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  As the CCJA is an attorney, the DOD maintains that this document falls within the ambit of attorney-client privilege, and consequently, squarely within Exemption 5.  Def.'s Mem. at 15.

O'Keefe asserts that he is "not interested in any attorney-client communication or attorney work product."  Pl.'s Opp'n ¶ 29.  Rather, in light of the DOD's alleged improper withholding of information, O'Keefe requests that all records be subject to an in camera review to verify the propriety of any exemptions.

However, "[i]n camera review is considered the exception, not the rule[.]"  Local 3 Intern. Broth. of Elec. Workers, AFL-CIO v. N.L.R.B., 845 F.2d 1177, 1180 (2d Cir. 1988).  Where nondisclosure can be assessed based on affidavits, in camera inspection is not necessary.  Id. (citing Donovan v. FBI, 806

F.2d 55, 59 (2d Cir. 1986)).  Here, the DOD has made clear that
the memorandum is the work product of an attorney, the CCJA,
providing legal advice to a client, the CCIG.  Scott Decl. ¶ 10.
Thus, O'Keefe's proposal that the memorandum be inspected _in
camera_ is declined, and the DOD's motion for summary judgment is
granted with respect to the use of Exemption 5 to withhold the
CCJA memorandum.


### Conclusion

For the foregoing reasons, defendant's motion for summary
judgment is granted with respect to the exemption of personally
identifying information of DOD personnel from the Hotline Report
and the USCENTCOM Report it released to O'Keefe.  With respect to
its burden of proving the thoroughness of its searches for
responsive documents, defendant's motion for summary judgment is
denied without prejudice.  Defendant may renew its motion upon
submission of detailed affidavits stating with particularity the
scope and manner in which it searched for documents responsive to
O'Keefe's FOIA request.

Dated: Brooklyn, New York
       November 30, 2006


                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge